**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In re:       Chapter 7

      Case No. 13-35089 (cgm)

      James A. Arnott, Jr. and Melissa A. Arnott,

           Debtors.

------------------------------------------------------------X

In re:       Chapter 7

      Case No. 13-35093 (cgm)

      James A. Arnott, III

           Debtor.

------------------------------------------------------------X

Jill Barber

      Adv. No. 13-09007

           Plaintiff,

v.

James A. Arnott, Jr.

           Defendant.

------------------------------------------------------------X

Jill Barber

      Adv. No. 13-09008

           Plaintiff,

v.

James A. Arnott, III.

           Defendant.

------------------------------------------------------------X

**MEMORANDUM DECISION GRANTING MOTION TO LIFT THE AUTOMATIC STAY**

**A P P E A R A N C E S :**

Andrea B. Malin
Genova & Malin, Attorneys
The Hampton Center
1136 Route 9
Wappingers Falls, NY 12590-4332
*Attorney for Debtor/Defendant James Arnott, Jr.*

Richard Scott Zirt
10 St. John Street
P.O. Box 1315
Monticello, NY 12701
*Attorney for Debtor/Defendant James Arnott, III*

Anthony C. Carlini, Jr.
Handel & Carlini, LLP
112 Delafield Street
Suite 200
Poughkeepsie, NY 12601
*Attorney for Plaintiff Jill Barber*

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

<u>**Introduction**</u>

Before the Court is a dispute between Jill Barber ("Plaintiff") and Debtors James A. Arnott, Jr. ("Arnott Jr.") and James A. Arnott, III ("Arnott III," together with Arnott Jr., "Debtors" or the "Defendants"). Plaintiff previously worked for a company owned and controlled by the Defendants.  After her employment was terminated, Plaintiff brought claims against Defendants in federal district court seeking damages for hostile work environment and unlawful retaliation.  Defendants subsequently filed for bankruptcy, staying the district court action.

In each of the Defendants' bankruptcy cases, Plaintiff commenced an adversary proceeding objecting to the dischargeability of the debt owed to her by the Defendants. Plaintiff then moved to lift the automatic stay to allow her claims to be liquidated in the district court. Defendants oppose Plaintiff's motions and bring motions to dismiss or, in the alternative, motions for summary judgment in the nondischargeability adversary proceedings. For the reasons that follow, the Court grants the Plaintiff's motion to lift the stay and denies the Defendants' motions to dismiss and for summary judgment.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. These matters are "core proceedings" under 28 U.S.C. §§ 157(b)(2)(G) (motions to terminate, annul, or modify the automatic stay) and (I) (determinations as to the dischargeability of particular debts).

## Background[1]

Prior to filing bankruptcy, Arnott Jr. owned and operated a company known as A&J Hometown Oil, Inc. ("A&J"). Opp'n to Mot. Lift Stay 2, No. 13-35089, ECF No. 37. Arnott III was an employee of the business. *Id.* at 21–22. The business distributed oil to residential and commercial customers. Stmt. Undisp. Facts 3, No. 13-09007, ECF No. 21. It was a seasonal business, with the majority of hours worked during the winter. *Id.* In July of 2008, the Plaintiff was hired as a part time employee. *Id.* In June of 2010 she was offered, and accepted, a full time job. *Id.*

---

[1]       Unless otherwise noted, the following discussion constitutes the Court's findings of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

On February 21, 2011 Plaintiff's employment with A&J was terminated. *Id.* at 5–6. In May of 2011, Plaintiff filed suit in the Southern District of New York alleging unlawful discrimination under state and federal law and naming both Arnott Jr. and Arnott III as defendants. *Id.* at 3. In December of 2012, Plaintiff filed an amended complaint alleging damages due to hostile work environment, retaliation, and intentional infliction of emotional distress. *Id.*

Plaintiff's complaint filed in District Court (the "District Court Complaint") alleges that Arnott III made various racial, sexist, and ageist remarks in the workplace that Plaintiff witnessed. District Court Complaint at 3. It alleges that Arnott III visited pornography websites at work while also making sexually lewd comments. *Id.* ¶ 18. It states that he made remarks to an employee regarding her weight and physical appearance. *Id.* ¶ 30. The District Court Complaint alleges that Arnott III yelled at Plaintiff for buying coffee from a gas station owned by members of the Arab race. *Id.* ¶ 42. It also states that Arnott III made comments regarding Germans, including making the "Heil Hitler" gesture, and that Plaintiff was offended due to her German ancestry. *Id.* ¶ 101.

Plaintiff states that she brought her complaints to the Defendants, and that no action was taken. *Id.* ¶¶ 46–47. Arnott Jr., who had a supervisory role, purportedly did nothing, and even laughed about the remarks. *Id.* ¶ 47. Defendants are accused of retaliating by forcing the Plaintiff into an 8 a.m. start time, which they allegedly knew she could not accommodate. *Id.* ¶ 49. Her subsequent termination for failing to come to work on time completed the alleged ruse. *Id.* ¶ 50. Plaintiff also asserts that Defendants have retaliated against her by embarrassing her and her husband publicly. *Id.* at ¶¶ 57–81.

I.      **Proceedings before the Administrative Law Judge ("ALJ").**

On May 3, 2011 an unemployment benefits hearing was held before an Administrative

Law Judge ("ALJ").  Stmt. Undisp. Facts ¶¶ 18–20, No. 13-09007, ECF No. 21.  The ALJ found

that Plaintiff was rightfully terminated due to her refusal to comply with the 8 a.m. start time.  *Id.*

¶ 21.

II.     **Proceedings in District Court.**

A.      **The Plaintiff's Complaint.**

The District Court Complaint has four causes of action, each alleging violations of

Plaintiff's rights under the Civil Rights Act of 1991, 42 U.S.C. § 1981, and violations of New

York State Human Rights Law § 290.  The claims underpinning the asserted violations are

hostile work environment, discrimination, and retaliation. District Court Complaint ¶ 1.

i.      **Hostile Work Environment Under 42 U.S.C. § 1981.**

Plaintiff asserts that she reasonably believed that the work environment was hostile or

abusive.  *Id.* ¶ 97.  She asserts she was highly offended by unwelcome and repeated comments

and harassment based on race.  *Id.* ¶ 97.  Defendant allegedly made remarks about Plaintiff's

German ancestry, calling Germans "Nazis" and making the "Heil Hitler" gesture.  *Id.* ¶ 40.

Plaintiff asserts that the discrimination and harassment were intentional, reckless, or malicious.

*Id.* ¶ 101.  Plaintiff asserts a claim under 42 U.S.C. § 1981, which states, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right
> in every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other.

### ii.    Retaliation Under 42 U.S.C. § 1981.

Plaintiff asserts that she was terminated in retaliation for her complaints, and that subsequent harassing conduct against Plaintiff's husband was retaliatory for the lawsuit and complaints. *Id.* ¶¶ 109, 110. According to Plaintiff, a demand that she start work at 8 a.m. was a materially adverse employment action designed to create grounds for termination. *Id.* ¶ 109. According to Plaintiff, Defendants knew that she would not be able to comply with that mandate. *Id.* ¶ 109.

### iii.    Harassment and Discrimination Under NYSHRL § 290.

Plaintiff also asserts that Defendants violated New York State Human Rights Law (NYSHRL) § 296, which provides, in relevant part:

1.  It shall be an unlawful discriminatory practice:

(a)  For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

Plaintiff asserts that Defendants were employers under the statute and that they had power over personnel decisions sufficient to terminate Plaintiff. *Id.* ¶ 120. According to Plaintiff, Arnott Jr., who was supervisor, did not take steps to remedy her complaints. *Id.* ¶ 123. Arnott Jr. also allegedly assisted Arnott III in his retaliation against and stalking of Plaintiff's husband. *Id.* ¶ 124, 125. Plaintiff believes Defendants are both jointly and severally liable under the definition of "employer" and "aiding and abetting" provisions of the NYSHRL. *Id.* ¶¶ 126–127.

### iv.    Retaliation Under NYSEL § 296(7).

Plaintiff also asserts that the termination amounted to retaliation under New York Executive Law ("NYSEL") § 296(7), which provides that it shall be an unlawful discriminatory

practice "[f]or any person engaged in any activity to which this section applies to retaliate or

discriminate against any person because [s]he has opposed any practices forbidden under this

article." *Id.* ¶ 134.  According to Plaintiff, Defendants' conduct has caused impairment to

Plaintiff's reputation, emotional distress, mental anguish, emotional pain, and suffering.  *Id.* ¶

141.

Plaintiff has allegedly suffered loss of income, loss of salary, loss of benefits, future

pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and

other non-pecuniary losses. *Id.* ¶¶ 99–100.  Plaintiff also seeks punitive damages.  *Id.* ¶ 101.

### B.    Judge Seibel's Ruling on Defendants' Motion to Dismiss.

Judge Seibel considered the allegations in the District Court complaint in deciding a

motion to dismiss.  She issued her decision (the "District Court Decision") on June 27, 2012.

Adv. Pro. 13-9007 Ex. BB, ECF No. 24; Adv. Pro. 13-9008 Ex. BB, ECF No. 18.[2]

Judge Seibel found that the same standard applies for New York hostile work

environment claims as for federal hostile work environment claims.  *Id.* at 6.  Judge Seibel

applied the standard that "a hostile work environment claim is sufficiently plead[ed] where the

complaint alleges that the plaintiff's workplace was 'permeated with discriminatory intimidation,

ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her]

employment and create an abusive working environment.'"  *Id.* at 7 (quoting *Acosta v. City of

New York*, 2012 WL 1506954, at *7 (S.D.N.Y. Apr. 26, 2012)).  The conduct must create an

environment that a reasonable person would find hostile, create an environment that the plaintiff

finds subjectively hostile, and create an environment due to plaintiff's race or ethnicity.  *Id.* at 8

(citing *Patone v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).

---

[2] Both ECFs refer to the same decision.

Judge Seibel found that Plaintiff must show that she is a member of a protected class, and that generalized racial comments do not create a hostile work environment. *Id.* at 9. She found that Plaintiff's allegations were "thin," yet plausible. *Id.* at 10. Allegations that Defendants saluted Hitler and called a white employee "white trash" in front of her were plausible. *Id.* at 10. Plaintiff also stated in the complaint that the comments were deeply offensive and altered her conditions of employment. Judge Seibel believed that these allegations, coupled with the other racially charged statements and behavior, could result in a plausible hostile workplace claim, as the ultimate inquiry focuses on the workplace as a whole. *Id.* at 10–11 (citing *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir. 2000)). Judge Seibel noted that hostile workplace claims are entitled to significant leniency at the pleading stage. *Id.* at 11–12 (citing *Flores v. N.Y.C. Human Res. Admin.*, 2011 WL 3611340, at *9 (S.D.N.Y. Aug. 16, 2011)).

As to retaliation, Judge Seibel applied the following standard: "(1) participation in a protected activity known to Defendants; (2) an adverse employment action; and (3) a causal connection between the two." *Id.* at 12, (quoting *Ahmed v. Gateway Grp. One*, 2012 WL 1980386, at *3 (E.D.N.Y. June 1, 2012)). Judge Seibel also noted that a plaintiff must only show that she had a good faith and reasonable believe that the conduct complained of was prohibited by law. *Id.* at 13 (quoting *Galdeiri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)). A causal connection could be shown by demonstrating that the protected activity was followed closely by discriminatory treatment, through other circumstantial evidence such as disparate treatment of fellow employees, or through evidence of retaliatory animus. *Id.* at 13 (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Judge Seibel held that the allegations survived the motion to dismiss. *Id.* at 13. Plaintiff pleaded that she complained about race related comments, and appeared to have a good faith

belief that the racial slurs constituted an unlawful employment practice. *Id.* at 13. She also pleaded that she suffered an adverse employment action when Defendants attempted to change her work hours and then terminated her. *Id.* at 13. Causal connection was pleaded based on the temporal proximity between the two events. *Id.* at 14. Drawing inferences in Plaintiff's favor, her complaints intensified during December of 2010, which was only two months before the alleged termination. *Id.* at 14.

Judge Seibel dismissed Plaintiff's intentional infliction of emotional distress claims, as racial slurs typically do not constitute conduct that is "extreme and outrageous" under New York law. *Id.* at 14–16 (citing *Daniels v. Alvarado*, 2004 WL 502561, at *6 (E.D.N.Y. Mar. 12, 2004)).

Judge Seibel declined to dismiss Arnott Jr. as a Defendant, finding that Plaintiff alleged that Arnott Jr. made racist remarks and played a role in retaliation. *Id.* at 17. Plaintiff also pleaded that Arnott Jr. failed to remedy the situation at work despite his supervisory role. *Id.* at 17.

## III. Proceedings in this Court.

### A. The Bankruptcy Complaint.

The District Court Complaint is incorporated by reference in the complaint that was filed in each of the adversary proceedings (the "Bankruptcy Complaint"), as the claims made subject of the District Court Complaint are the claims that the Plaintiff contends are nondischargeable in this Court. *See* Bankr. Compl., Ex. A, No. 13-09007, ECF No. 1; Bankr. Compl., Ex. A, No. 13-09008, ECF No. 1.[3] The Bankruptcy Complaint alleges that the facts in the District Court Complaint give rise to a nondischargeable claim for willful and malicious injury under 11 U.S.C.

---

[3] The Bankruptcy Complaint in each case is identical to the other except for the name of the Defendant. For ease of reference, citations to the Bankruptcy Complaints where the relevant provisions are identical will be made to the first complaint that was filed in Adv. No. 13-09007.

§ 523(a)(6).  Bankr. Compl. ¶ 11, No. 13-09007, ECF No. 1.  Plaintiff believes the conduct was

intentional, abusive, and outrageous.  *Id.* ¶ 12.

### B.    Plaintiff's Motion for Relief from the Automatic Stay.

Plaintiff filed a motion for relief from the automatic stay in both of Debtors' cases.  Mot.

Stay Relief, No. 13-35089, ECF No. 29; Mot. Stay Relief, No. 13-35093, ECF No. 12.  ("Stay

Relief Motion").  The Stay Relief Motion asserts that Plaintiff should be allowed to proceed with

her action in district court.  *Id.* at 2.

At the hearing on the stay relief motions held on October 8, 2013, the Debtors argued that

a recent Supreme Court decision would change the determinations made by Judge Seibel in the

District Court Decision.  The Court adjourned the stay relief motions and allowed the Defendants

to file motions to dismiss the adversary proceedings.  The Court sought to determine whether

there were colorable claims as a matter of law before returning the matter to district court.  *See In*

*re Chateaugay Corp.,* 111 B.R. 67, 76 (Bankr. S.D.N.Y. 1990) ("[T]he bankruptcy court must

have jurisdiction to make the threshold determination of whether as a matter of law, a claim

exists which can be asserted against the debtor, even if that claim sounds in personal injury tort

or wrongful death.").

### C.    Defendants' Motion to Dismiss.

Defendants' motions to dismiss are the same. Mot. Dismiss, No. 13-09007, ECF No. 21;

Mot. Dismiss, No. 13-09009, ECF No. 16.

### i.    Hostile Workplace.

The first argument made by Defendants is that Plaintiff cannot establish the underlying

federal or state causes of action and, as such, there is no nondischargeable debt.  Mot. Dismiss

Memo of Law 2, No. 13-09007-cgm, ECF No. 21; Mot. Dismiss, Ex. Memo. of Law 2, No. 13-

09008-cgm, ECF No. 16 [hereinafter "Def's Memo"].  According to Arnott III, a hostile work environment claim requires the plaintiff to demonstrate a workplace that is infused with "discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive [enough] to alter the conditions of the victim's employment.'"  *Id.* at 2 (quoting *Cruz v. Coach Stores, Inc.*, 202 F. 3d 560, 570 (2d Cir. 2000).  There must, according to Defendants, be both an objective and a subjective perception on the part of the alleged victim.  Def's Memo at 2.

According to Defendants, Plaintiff only alleges one isolated comment about her German heritage after the Defendants learned that she was German.  *Id.* at 3.  Defendants believe one comment (directed at her) and one incident overall (the other facts in the complaint regard the Hitler/Nazi salute and comments) cannot rise to the level of a hostile work environment.  *Id.* at 4.  Plaintiff allegedly admits that there was not a second incident once she informed Arnott III of her German descent.  *Id.* at 5.  Defendants also point out that Plaintiff admits that she was not trying to leave the job.  *Id.* at 6.

According to Defendants, other comments directed at third parties in the District Court Complaint cannot give rise to a hostile work environment claim, as Plaintiff is not a member of the other races.  *Id.* at 6.  According to Defendants, the mere utterance of a comment that offends an employee does not necessarily give rise to a Title VII hostile workplace claim.  *Id.* at 6.  According to Arnott III, racial comments alone are not sufficient to create a hostile work environment.  *Id.* at 6.  Rather, the conduct must allegedly rise to a change in the level of the workplace terms and conditions of employment.  *Id.* at 7.

Plaintiff opposes, arguing that that hostile work environment claims are assessed based on the totality of circumstances, which would include remarks that are not made directly at the plaintiff.  Adv. Pro. 13-09007-cgm, Pl's Memo in Opp., 32, ECF No. 25; Adv. Pro. 13-09008-

cgm, Pl's Memo In Opp., 32, ECF No. 19 [hereinafter Pl's Memo].  According to Plaintiff, the

inquiry focuses on the workplace as a whole.  *Id.* at 32 (citing *Cruz* 202 F.3d at 570–71).  As

such, the assertion by Defendants that Plaintiff's claims are only based on one anti-German

remark is allegedly unsupported by law.  *Id.* at 32.  Plaintiff also argues that under Second

Circuit law, the threshold for pleading discrimination is particularly low.  *Id.* at 32–33.

According to Plaintiff, courts have found that the mere utterance of the "N-word" has been found

sufficient to constitute a hostile workplace.  *Id.* at 33.  Based on this caselaw, Plaintiff argues that

Defendants' alleged repeated conduct easily constitutes a hostile work environment.  In other

words, even if Defendants are correct, and the remarks in the complaint are stray remarks, their

serious nature makes them plausible grounds for a hostile workplace finding.  *Id.* at 34.  In any

event, the amended complaint states that Plaintiff was specifically harassed due to her German

heritage.  *Id.* at 35.

Plaintiff argues that Arnott Jr. was directly involved in the hostile workplace and

subsequent retaliation, and that the District Court expressly found that Plaintiff had articulated a

plausible claim against Arnott Jr.  *Id.* at 37.  The District Court Complaint also alleges that

Arnott Jr. made racist remarks regarding an African American employee.  *Id.* at 39.  It alleges

that Plaintiff brought her concerns to Arnott Jr. and they were not remedied.  *Id.* at 39.  It alleges

that he laughed about the remarks.  *Id.* at 39.  It also asserts that he retaliated by demanding that

Plaintiff start work at 8 a.m. even though he knew this was not possible given her personal

schedule.  *Id.* at 39.

### ii.    Retaliation.

According to Defendants, after a recent Supreme Court decision, a claim for retaliation

must survive the "but for" standard, meaning that the plaintiff must show that the termination

would not have occurred but for the complaints of the plaintiff. Def's Memo at 9 (citing *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517 (2013)). Defendants argue that the fact that Plaintiff would not come in during regular business hours was the reason for the termination. Def's Memo at 9. Defendants argue that under the "but-for" standard, if they had *any* legitimate reason for their actions, no retaliation cause of action exists, even if combined with a retaliatory reason. Def's Memo at 9. Defendants point to the decision of the ALJ, who determined that Plaintiff was not entitled to unemployment benefits. The ALJ found:

> There was no dispute between the parties that the [Plaintiff]'s employment ended because she would not alter her start time from 9 a.m. to 8 a.m. There was also no dispute between the parties that the [Plaintiff] was hired initially to work a 9 a.m. start time and two years later when she was made a full-time employee continued starting her day at that same hour . . . . The employer was free of course, to deploy staff as it saw fit, but the [Plaintiff]'s inability to adopt an earlier start time due to personal circumstances does not constitute misconduct for unemployment purposes.

Adv. Pro. 13-09007-cgm, Dr's Arnott Jr. Mot. Dismiss Ex. G, ECF No. 21; Adv. Pro. 13-09008-cgm, Dr's Arnott III Mot. Dismiss Ex. G, ECF No. 16.

Defendants argue that the evidence shows that Plaintiff was given two weeks' notice of the change in hours and nonetheless did not try to accommodate the change. Def's Memo at 10.

Plaintiff argues the "but for" retaliation standard laid forth in the Supreme Court's recent decision (*Nassar*) does not upset Judge Seibel's prior decision that Plaintiff has established a plausible claim for retaliation in the District Court Complaint. Pl's Memo at 16. According to Plaintiff, subsequent Supreme Court and Second Circuit decisions have made clear that "but for" causation does not mean that retaliation could be the only purpose in the termination. Pl's Memo at 17–18. Even if retaliation can be the only basis, Plaintiff believes that the District Court Complaint's allegations of stalking underpin a plausible claim that Plaintiff was only terminated due to her assertions of discrimination at work. Pl's Memo at 19.

Plaintiff also argues that the decision of the ALJ is outside evidence beyond the scope of

a motion to dismiss.  Pl's Memo at 9–11.  As such, Plaintiff asks that the Court disregard the

transcript, decision, and related arguments.  Pl's Memo at 9–11.  To consider them, Plaintiff

believes the Court would have to convert this to a motion for summary judgment.  Pl's Memo at

11–12.

### iii. <u>Nondischargeability.</u>

According to Defendants, the debt is dischargeable as Plaintiff has not established that

the injuries were willful and malicious.  Def's Memo at 12.  Even if the actions could create a

hostile work environment, Defendants argue that there were no damages.  Def's Memo at 15.

Defendants point to the fact that Plaintiff admitted that she did not want to leave the job.  Def's

Memo at 15.   In addition, the ALJ found that there was a legitimate reason for the termination.

Def's Memo at 15.   Defendants argue this means that the conduct in terminating Plaintiff was

not willful or malicious.  Def's Memo at 15.

Plaintiff believes that the District Court Complaint establishes several bases for

concluding that the injuries rise to the level of willful and malicious.  In particular, she points to

the following allegations in the complaint: the Heil Hitler gesture and calling her a Nazi after she

indicated she was German; subjecting her to "white trash" slurs; calling women "whores";

bringing weapons to work; yelling at her due to her "association with Arabs"; subjecting her to

numerous other racial slurs; calling an African-American employee a "Jamaican criminal";

failure by Arnott Jr. to address the wrongs, and instead laughed at the remarks; and the creation

of a pretext to fire Plaintiff (Defendants allegedly knew she could not come in to work at 8 a.m.).

Pl's Memo at 28–30.

### iv. <u>Summary Judgment.</u>

Defendants seek, in the alternative, a finding that they are entitled to summary judgment against Plaintiff.  Def's Memo at 19.

Plaintiff believes the request for summary judgment is inappropriate at this time given that Plaintiff has not had the opportunity to conduct discovery in this case.  Pl's Memo at 3–4.  According to Plaintiff, no discovery has taken place at all.  Pl's Memo at 4.  This case was filed "mere weeks" after Plaintiff filed her second amended complaint.  Pl's Memo at 4.  Plaintiff believes the several questions of fact are in issue.  Pl's Memo at 4–8.

## <u>Discussion</u>

Section 362 of the Bankruptcy Code provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . for cause."  11 U.S.C. § 362(d)(1). In the Second Circuit, "[t]he burden of proof on a motion to lift or modify the automatic stay is a shifting one."  *In re Sonnax Indus.*, 907 F.2d 1280, 1285 (2d Cir. 1990). "Section 362(d)(1) requires an initial showing of 'cause' by the movant.  Once the movant establishes 'cause,' the burden of proof shifts to the debtor."  *In re Burger Boys, Inc.*, 183 B.R. 682, 687 (S.D.N.Y. 1994).  "If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."  *Sonnax*, 907 F.2d at 1285.

In *Sonnax*, the Second Circuit adopted twelve factors "to be weighed in deciding whether litigation should be permitted to continue" in a forum other than the bankruptcy court. *Id.* at 1286.  Those factors are:

1. whether relief would result in a partial or complete resolution of the issues;

2. lack of any connection with or interference with the bankruptcy case;

3. whether the other proceeding involves the debtor as a fiduciary;

4.      whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

5.      whether the debtor's insurer has assumed full responsibility for defending it;

6.      whether the action primarily involves third parties;

7.      whether litigation in another forum would prejudice the interests of other creditors;

8.      whether the judgment claim arising from the other action is subject to equitable subordination;

9.      whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

10.     the interests of judicial economy and the expeditious and economical resolution of litigation;

11.     whether the parties are ready for trial in the other proceeding; and

12.     impact of the stay on the parties and the balance of harms.

*Id.* (citing *In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984)).  "The decision of whether to lift the stay is committed to the discretion of the bankruptcy judge."  *Id.* (alterations and internal quotation marks omitted).

**A.      *Subject-Matter Jurisdiction***

At the outset, Plaintiff's motions to lift the stay present an issue of subject matter jurisdiction.  The list of "core" matters set forth in 28 U.S.C. § 157(b)(2) specifically excludes adjudication of "personal injury tort . . . claims."  28 U.S.C. §§ 157(b)(2)(B); (O).  Accordingly, 28 U.S.C. § 157(b)(5) provides that "[t]he district court shall order that personal injury tort . . . claims shall be tried in the district court in which the bankruptcy case is pending."  *Id.* § 157(b)(5).  Discrimination claims such as those in the present case are included under the scope of "personal injury" actions.  *See Goldschmidt v. Erickson (In re Erickson)*, 330 B.R. 346, 349 (Bankr. D. Conn. 2005) ("[C]laims alleging that a debtor illegally discriminated in employment

on the basis of race, creed, disability or sex are personal injury tort claims."). The Court

therefore lacks jurisdiction to make factual determinations with respect to those claims. *Id.*; *see*

*Considine v. Schachter (In re Schachter)*, 2007 WL 2238293, at *1 (Bankr. S.D.N.Y. Aug. 1,

2007) ("[B]ankruptcy courts have no power to make factual determinations regarding personal

injury tort claims.").

 In their respective opposition papers to the motions to lift stay, Defendants rightly

pointed out that the Court does have jurisdiction to determine whether a personal injury tort

claim has been sufficiently stated as a matter of law. *See In re Chateaugay Corp.*, 111 B.R. 67,

76 (Bankr. S.D.N.Y. 1990) ("[T]he bankruptcy court must have jurisdiction to make the

threshold determination of whether as a matter of law, a claim exists which can be asserted

against the debtor, even if that claim sounds in personal injury tort or wrongful death."); *see also*

*Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.)*, 398 B.R. 736, 749

(S.D.N.Y. 2008) ("[The bankruptcy court] decide[d] whether, as a matter of law, a viable claim

had been asserted against the debtor. [The bankruptcy court] did not decide the claim on the

merits. [The bankruptcy court] had undoubted jurisdiction to make such a determination.").

 In this case, unlike in *Chateaugay* or *Alper*, the district court has already determined the

sufficiency of Plaintiff's claims in its ruling on Defendants' motion to dismiss her complaint. In

light of that determination, this Court initially thought there was nothing left to be done but

adjudicate the merits of Plaintiff's personal injury tort claims. Pursuant to 28 U.S.C. § 157(b)(5),

the final adjudication of these claims must be left to the district court. *See Erickson*, 330 B.R. at

349. This fact alone constitutes sufficient cause to lift the stay. *See id.* at 349–50 ("In light of

the fact that this court cannot liquidate the discrimination claim, it is readily apparent that the

movant is entitled to relief from stay so that she may liquidate the claim.").

Defendants, however, pointed the Court to a recent Supreme Court decision that they contend is dispositive of the claims raised by Plaintiff. In the interest of expediency, the Court held off ruling on the motion for stay relief to allow Defendants to file motions to dismiss the adversary proceedings on that basis. After review of the Supreme Court case, and after consideration of the motions to dismiss and the exhibits attached to them, the Court now decides to grant Plaintiff's motions for relief from stay.

**B.      The Sonnax Factors**

Application of the relevant *Sonnax* factors favors lifting the stay to allow Plaintiff to continue to prosecute her claims in district court. "Not all of the factors are relevant in every case, and 'cause' is a broad and flexible concept that must be determined on a case-by-case basis." *In re Residential Capital, LLC*, 2013 WL 1553799, at *3 (Bankr. S.D.N.Y. Apr. 12, 2013) (citation omitted). The parties identify a total of 6 relevant factors.

The first factor (whether relief would result in a partial or complete resolution of the issues) leans in support of granting stay relief. Defendants correctly allege that "the issue of non-dischargeability pursuant to 11 U.S.C. § 523(a)(6) must ultimately be determined by this Court." Def. Memo at 6. Thus, a complete resolution of the case cannot be achieved in the district court. However, contrary to Defendants' allegations, a complete resolution cannot be achieved in this Court, either, since this Court may not adjudicate the merits of Plaintiff's personal injury action. *See Alper*, 398 B.R. at 749. This is the system established by Congress in 28 U.S.C. § 157(b)(5). Under this system, the merits of the personal injury tort claim should be adjudicated first, since "[p]roof that the debtor intentionally and maliciously injured the movant by illegally discriminating against her necessitates proving the underlying discrimination allegations, which the bankruptcy court lacks jurisdiction to hear." *Erickson*, 330 B.R. at 350.

The second and seventh factors (lack of any connection with or interference with the bankruptcy case and whether litigation in another forum would prejudice the interests of other creditors, respectively) also lean in favor of lifting the stay. Adjudicating the merits of Plaintiff's claim in the district court would not interfere with the Defendants' bankruptcy cases or unduly prejudice creditors, since the district court is the specific forum where personal injury tort claims such as Plaintiff's must be litigated to conclusion pursuant to 28 U.S.C. § 157(b)(5). *See Erickson*, 330 B.R. at 349. The lack of any interference with the case or prejudice to other creditors is confirmed by the lack of any opposition to the motion by the chapter 7 trustee or any creditors in Arnott Jr.'s case, which will purportedly yield assets to creditors.

The fourth factor (whether a specialized tribunal has been established to hear the cause of action) only marginally applies insofar as 28 U.S.C. § 157 provides that the district court is a "specialized" forum for adjudication of personal injury tort claims. *See* 28 U.S.C. § 157(b)(5).

The tenth factor (the interests of judicial economy and the expeditious and economical resolution of litigation) also supports lifting the stay. Plaintiff's underlying claims have been pending in the district court since 2011 and have resulted in rulings denying Defendants' motion to dismiss Plaintiff's complaint and granting Plaintiff leave to file a second amended complaint. The district court is sufficiently familiar with the facts of Plaintiff's complaint to make "starting over" in this Court unnecessarily duplicative.

Defendants point the Court to the Supreme Court's decision in *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517 (2013) as having a major effect on this case such that judicial economy would be advanced by entertaining dispositive motions here. In *Nassar*, the Supreme Court found that a plaintiff alleging Title VII retaliation must show that the retaliation was the "but-for" cause of the adverse action as opposed to being a "substantial" or

"motivating" factor.  *Id.* at 2533.  Previously, in this Circuit, the plaintiff only had to show that

the retaliatory motive was a "substantial or motivating factor behind the adverse action."

*Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001).  Defendants argue that this new standard

means that the finding of the ALJ that there was a legitimate purpose in firing Plaintiff means

that the retaliation claims must fail.

    The Court does not believe that the Supreme Court's decision in *Nassar* is sufficient to

keep the cases here.  After the decision, the Second Circuit held that "a plaintiff's injury can

have multiple 'but-for' causes, each of which may be sufficient to support liability."  *Zann Kwan

v. Andalex Group LLC*, 737 F.3d 834, 846 n.5 (2d Cir. 2013).  According to the Second Circuit,

"'but-for' causation does not require proof that retaliation was the only cause of the employer's

action, but only that the adverse action would not have occurred in the absence of the retaliatory

motive."  *Id.* at 845.  In particular, "the but-for causation standard does not alter the plaintiff's

ability to demonstrate causation at the prima facie stage on summary judgment or at trial

indirectly through temporal proximity."  *Id.* at 846.

    The decision of Judge Seibel found that Plaintiff pleaded that the termination was done

in retaliation, and that Plaintiff had shown a temporal relationship between her complaints and

the termination.  There can, under Second Circuit law issued subsequent to *Nassar*, be more than

one but-for cause of retaliation, and temporal proximity is still a valid form of causation.  Judge

Seibel found the complaint to state a plausible causal link based on temporal proximity; it is not

clear from the Supreme Court decision that Judge Seibel's decision is now incorrect.  The Court

finds that judicial economy would not be advanced by upsetting the decision already made at the

district court.

Additionally, *Nassar* only addresses the retaliation causes of action. The rest of the complaint was found plausible by the district court in any event, and the Court would lift the stay to allow those causes of action to proceed.

It should also be noted that Defendants now ask the Court to go beyond the actions taken in District Court by asking for summary judgment, and by presenting evidence, including affidavits, images, and the transcript of the ALJ, for the Court to consider. The Court notes that factual allegations in memoranda or legal briefs are treated as matters outside the pleading for purposes of Federal Rule of Civil Procedure 12(b). *Fonte v. Bd. of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988). "[A district] court may either exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Id.* at 25.

"Only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000). The Court would be required to preside over discovery before summary judgment would be entertained in this case. Given that Judge Seibel has already ruled on the sufficiency of these claims, and that this Court could not make a factual determination with respect to these claims, it makes more sense to lift the stay and return the case to district court.

The twelfth factor (impact of the stay on the parties and the balance of harms) also supports stay relief. The only harm identified by Defendants is the harm of having to litigate their claims in district court and then return to this Court to adjudicate dischargeability. This is the result mandated by Congress in 28 U.S.C. § 157(b)(5).

On balance, the *Sonnax* factors weigh in favor of lifting the stay and allowing Plaintiff's personal injury tort claims to be adjudicated in the district court.

## C.    *Dischargeability*

Defendants assert that this Court should decline to lift the stay until it determines whether or not Plaintiff's unliquidated claims against Defendants are non-dischargeable.  If the claims are non-dischargeable, Defendants assert that the Court may then lift the stay to allow Plaintiff to liquidate those claims in the district court.  If Plaintiff's claims are dischargeable, this would practically have the effect of mooting the district court litigation.

Despite Defendants' contentions, the issue of dischargeability is not ripe for consideration.  Although the Court does have jurisdiction to determine dischargeability under § 523(a), a ruling on dischargeability will potentially require factual findings on the underlying claims, which can only be made by the district court.  *See Schachter*, 2007 WL 2238293, at *1.

In *Erickson*, the holder of an unliquidated personal injury discrimination claim sought to lift the stay to adjudicate its claim in state court.  *Erickson*, 330 B.R. at 347–48.  The debtor opposed the motion, asserting "that the state-court proceeding should continue to be stayed until the bankruptcy court has ruled on the question of dischargeability."  *Id.* at 349.  The court granted the motion to lift the stay, noting that "[p]roof that the debtor intentionally and maliciously injured the movant by illegally discriminating against her necessitates proving the underlying discrimination allegations, which the bankruptcy court lacks jurisdiction to hear."  *Id.* at 350.

The same reasoning applies here.  The dischargeability issues are not ripe for determination until Plaintiff's personal injury tort claims have been liquidated by a court of competent jurisdiction.  As noted above, the district court has already ruled on the sufficiency of

the complaint, leaving little for this Court to do.  The *Nassar* holding does not give the Court a

reason to conclude that judicial economy would be advanced by entertaining dispositive motions

before lifting the stay.

### Conclusion

For the foregoing reasons, the Court grants the motion to lift stay to allow Plaintiff's

claims to proceed outside of this Court.  Defendants' motions to dismiss and for summary

judgment are denied.  Plaintiff should submit an order consistent with this opinion.


Dated: Poughkeepsie, New York
     July 11, 2014           /s/ Cecelia G. Morris                                          
                                CECELIA G. MORRIS
                                CHIEF UNITED STATES BANKRUPTCY JUDGE